IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF NEW MEXICO

**EPPIE MONTOYA,**

     **Plaintiff,**

**vs.**                                                 Case No. 14-CV-00568 JB-RHS

**DANNY PACHECO,**
In his individual capacity,
and **THE CITY OF ESPANOLA,**

     **Defendants.**

<u>**REPORT OF PLAINTIFF'S EXPERT**</u>

**DAVID W. OSUNA**

### I.    INTRODUCTION

I have been retained by Plaintiff's counsel to conduct an evaluation and give opinions concerning a civil lawsuit entitled Eppie Montoya v. Danny Pacheco and the City of Espanola, 1:14-CV-00568 JB-RHS. I have reviewed the case file related to Plaintiff's claims and the documents setting forth the basis for this incident on March 19, 2013 concerning his Tasing and arrest. I understand that Mr. Montoya has not yet been deposed, and that other depositions are scheduled to happen. Please be advised that when all of the deposition testimony is available, I may need to supplement this report to add to or refine my opinions where necessary. Also, it is necessary to state that I do not make credibility determinations in expressing my opinions.

### II.    PROFESSIONAL QUALIFICATIONS

I have attached as Exhibit 1, an outline of my experience and qualifications. The following is a brief summary of the same. In 1978 I began my career as a uniform law enforcement officer with the New Mexico State Police (NMSP). In 1987 I was promoted to the rank of Sergeant, Uniform Bureau where I began to review and approve investigative reports.



**PLAINTIFF'S EXHIBIT**

tabbies

A

Since 1987 I have reviewed hundreds of investigative reports that include Criminal, Narcotic, Alcohol, and Internal Affairs. In 1991 I transferred to the State Police Training Bureau where I was certified as an Instructor in Custody Control and the Use of Force. In 1992, I was promoted to the rank of Lieutenant and was trained in the field of Internal Affairs Investigation. In December 2002, after 24 years of service as a law enforcement officer I retired as a NMSP Deputy Chief, Investigations Bureau. As a NMSP Deputy Chief and Major, I was the Chairperson in the Department of Public Safety/NMSP Disciplinary Appeal Hearings.

In 2005, I began my career as a Private Investigator working for Criminal Defense and Civil Attorneys. I was a Sub-Contractor to an Investigative firm, "Select, Organizational, Administrative, Resources, and Services" (SOARS) which contracts with government organizations for Internal Affairs investigations. Some of the entities include the City of Albuquerque (Police Department), State Risk Management, Bernalillo County, New Mexico Associations of Counties, and the Navajo Nation. Since 2005 I have investigated over 500 Internal Affair cases for those government agencies. As of this date, I am still conducting Internal Affairs Investigations, reviewing reports, procedures, and governmental investigations.

## II.    TESTIMONY AT TRIAL AND DEPOSITIONS

In the past I have been qualified as an expert in police investigations and conduct. Additionally, I have been deposed related to matters in litigation approximately ten times.

## III.    COMPENSATION

My fee for this case is $75 per hour for document review, report writing, and deposition and court testimony plus reimbursement for personal expenses in connection with the case.

## IV.    INFORMATION CONSIDERED IN FORMING MY OPINIONS

    A. Plaintiff's Complaint for Damages

B.  EPD Case #2013-03148 CD

C.  Supervisory Taser Use Report

It is my understanding that discovery is in its early phases and as of the date of this report I have been told that the Defendants intend on supplementing information that has been requested by Plaintiff's counsel.  It is more than likely that I will need to supplement this report to add to or refine my opinions based on information that is outstanding.

**V. OPINIONS**

The questions I offer opinions on are as follows:

1.  Was the Use of Force (Taser) related to EPD Case #2013-03148 conducted by Officer Danny Pacheco within the guidelines of the Reactive Control Module (RCM)?

The answer to question #1 is no, as Eppie Montoya did not meet the elements of the crime Disorderly Conduct and there are no facts which suggest that there was an immediate threat to the Allsup's personnel or Officer Pacheco. A reasonable officer in Officer Pacheco's position would have considered the **seriousness of the offense suspected** and the **immediate threat to the officer or others who were present** prior to determining if the "Use of Force" by a Taser was justified.

According to Officer Pacheco's report he claims to have suspected Mr. Montoya of committing the crime of Disorderly Conduct which constitutes a petty misdemeanor in the State of New Mexico.  Petty misdemeanors are the least serious criminal offenses in New Mexico. Thus, the seriousness of the offense that Officer Pacheco suspected Mr. Montoya of committing was minimal.

In none of the evidence that I have reviewed was there any indication that Mr. Montoya posed a threat to Officer Pacheco, any others that were present, or even himself.  This is further

evidenced by the facts that Mr. Montoya's hands were occupied with a cell phone and a puppy immediately prior to the time Offficer Pacheco tased Mr. Montoya in the back.  Thus, because there was no serious crime suspected and no threat to anyone in the area the use of force was not justified; let alone the use of a taser.

The Reactive Control Model (RCM) is attached to this report as Exhibit 2.  The RCM is a guideline for law enforcement in using different levels of force while attempting to take a person into custody.  In this situation concerning Mr. Montoya there is no documentation to support a claim that Montoya had a weapon, that he verbally or physically threatened anyone in the store or Officer Pacheco. Mr. Montoya is within his constitutional rights not to answer any questions by law enforcement and the Reactive Control Model would not justify use of force by the subject who is passively refusing to answer a question. Additionally, the right to ask for identification by Officer Pacheco is not unlimited and the Reactive Control Module would not justify use of force base on a mere refusal to provide identification. At the time of the incident, Montoya was not in a motor vehicle, thus the request for a driver's license by Officer Pacheco is not warranted.

**The RCM does not allow for any use of force unless there is an active assailant threatening the officer or others.**  The taser is an intermediate weapon that is just below a lethal weapon and thus there is no justification of its use unless the officer or anyone else was being actively threatened.  Use of force by a taser in this instance was not justified under the RCM.  Regardless of Mr. Montoya's actions, tasing Mr. Montoya in the back at least twice was not justified and no reasonable officer would believe that it was.

2.    Was the arrest of Plaintiff Eppie Montoya within the elements of the Disorderly Conduct New Mexico State Statute?

30-20-1. Disorderly conduct, Disorderly conduct consists of:

    A.   engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace; or

    B.   maliciously disturbing, threatening or, in an insolent manner, intentionally touching any house occupied by any person.

Whoever commits disorderly conduct is guilty of a petty misdemeanor.

Because Officer Danny Pacheco did not have reasonable suspicion of a crime being committed there was no probable cause for an arrest. Violations of possible Allsup's policies on attire and animals were not sufficient probable cause or even reasonable suspicion that a crime has been committed and would not have justified the detention and arrest of Mr. Montoya. Also, it is important to note that Officer Pacheco was not present during the conversations with store clerk and thus he could not have witnessed the petty misdemeanor crime of disorderly conduct being committed, and as such, would not have been able to arrest Mr. Montoya due to the Misdemeanor Arrest Rule. The Misdemeanor Arrest Rule, in short, with the exception of a couple of limited exceptions, is that an officer cannot make an arrest on individual suspected of committing a misdemeanor out of his presence.

The mere allegation of Mr. Montoya, "talking back in a loud voice," does not meet the elements of a crime and does not constitute a violation of the Disorderly Conduct statute. Present at the Allsup's were clerks and Officer Pacheco. Police Officers are not generally considered part of the public while performing their duties. There is no mention in Officer Pacheco's report of the clerk, David, participating in a loud voice which means the clerk did not participate in Montoya's alleged behavior. Therefore, Montoya did not meet the elements of Disorderly Conduct and should not have been arrested, much less, tased by Officer Pacheco.

Officer Pacheco, in his report, did not identify a crime being committed while Mr. Montoya was inside the Allsup's. Officer Pacheco only threatened Mr. Montoya with Disorderly Conduct after he attempted to walk away. This further supports that the arrest of Eppie Montoya on the charge of Disorderly Conduct was not justified, because walking away from an officer does not constitute Disorderly Conduct.

At any time, police may approach a person and ask questions. The objective may simply be a friendly conversation; however, the police also may suspect involvement in a crime, but have a lack "specific and articulable facts" that would justify a detention or arrest, and hope to obtain these facts from the questioning. The person approached is not required to identify himself or answer any other questions, and may leave at any time. Police are not usually required to tell a person that he is free to decline to answer questions and go about his business; however, a person can usually determine whether the interaction is consensual by asking, "Am I free to go?" A person is detained when circumstances are such that a reasonable person would believe he is not free to leave. Officer Pacheco had no reason to believe a crime had been committed but still grabbed the wrist of Montoya which would lead a reasonable person to believe he/she is being detained.  Therefore, Officer Pacheco detained Mr. Montoya without any reasonable belief that Mr. Montoya was engaging in criminal activity.

## VI.    CONCLUSION

To the extent Mr. Montoya was criminally charged and incarcerated based on the allegations of disorderly conduct for his actions or inactions in the Allsup's store, the arrest and use of the Taser was not justified. Officer Danny Pacheco did not follow practices of law enforcement protocol in establishing the elements of a crime, reasonable suspicion, or probable cause. Officer Pacheco's failures led to grabbing Mr. Montoya's wrist without justification.

Officer Pacheco escalated the situation by following Mr. Montoya outside the store, and ultimately unreasonably utilized the Taser on Mr. Montoya. That was not the case and thus any force would not be justified.

The decision making capabilities of Officer Pacheco in this instance are highly questionable. Officer Pacheco had no right to detain or place Mr. Montoya in custody with any use of force, and as such, the review of the RCM is in essence is unnecessary because any use of force would have been unjustified by normal practices. Assuming for the sake of argument that a reasonable officer would have believed probable to make an arrest in this case use of the Taser still would not have been justified. Most telling is the fact that Mr. Montoya was tased by Officer Pacheco in the back while not posing a threat to anyone. That Officer Pacheco used his taser on Mr. Montoya as a first resort is contrary to the RCM. The RCM would have required Mr. Montoya to have been actively attacking Officer Pacheco before its use was justified. The evidence available to me makes it difficult to understand why Officer Pacheco deployed the Taser on Mr. Montoya when he was walking away from the officer, carrying a puppy in one hand, and calling 911 with the cell phone in the other hand. This evidence all indicates that Mr. Montoya did not pose a threat to anyone, and thus clearly the use of force was not justified and was excessive.

Respectfully Submitted,

David. W. Osuna