**IN THE UNITED STATES DISTRICT COURT**
**FOR THE STATE OF NEW MEXICO**

**EPPIE MONTOYA,**

**Plaintiff,**

**vs.** Case No. 14-CV-00568 JB-CG

**DANNY PACHECO,**
In his individual capacity,
and **THE CITY OF ESPANOLA,**

**Defendants.**

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiffs respectfully move the Court to compel the Defendants to provide full and complete answers to Plaintiffs' First Interrogatories and Requests for Production to Defendants. As grounds therefore, Plaintiffs state as follows:

### I. Statement of Facts

Plaintiff brings this action under 42 U.S.C Section 1983 and alleges, inter alia, that Defendants violated the Fourth Amendment to the United States Constitution. Plaintiff contends his rights under the Fourth Amendment were violated on March 19, 2013 because Defendant Pacheco, while using excessive force by means of a taser, unreasonably arrested him in the absence of legal justification. Additionally, Plaintiff has brought claims related to the same series of conduct under the New Mexico Tort Claims Acts and the State of New Mexico Constitution.

Finally, and imperative for purposes of this motion, Plaintiff alleges his injuries were caused by the Defendant City of Espanola failure to provide adequate training, supervision, and/or discipline to Defendant Pacheco that led to the violations of Plaintiff' rights as detailed above. Plaintiff further alleges Defendant City of Espanola maintained an unwritten custom and

practice that permitted or condoned the violations such as the violations that Plaintiff Montoya endured in this matter. With respect to the events that give rise to this motion, on November 6, 2014, Plaintiff served Defendants with his first set of interrogatories and requests for production. On or about December 9, 2014, Defendants filed their Answers and Responses. (Pertinent portions of the discovery requests and responses in question are attached hereto as Exhibit 1). Prior to Defendants' December 9, 2014 production of discovery, counsel for Defendants prefaced the discovery production by indicating that the production would be incomplete. (correspondence between counsel attached hereto as Exhibit 2). Counsel for the parties agreed that Defendants would supplement the discovery production by January 8, 2015. *Id*. As of the date of this filing Defendants have not supplemented their discovery.

On January 14 and January 15, 2015, counsel for Plaintiff wrote counsel for Defendants noting the agreed upon date to supplement discovery and to asked them to supplement Defendants' discovery. (Emails sent to counsel for Defendants attached hereto as Exhibit 3). To be thorough, on January 21, 2015, Plaintiff sent counsel for Defendants a letter to attempt to resolve any dispute as outlined herein, and asked them to supplement discovery by January 29, 2015. (Good Faith Letter attached hereto as Exhibit 4). As of the date of this filing, Plaintiffs have not received a response to their efforts to resolve the matters that are the subject of this motion.

## II. Deficient Answers[1]

### A. Discovery Requests to which Defendants did not object but Provided Insufficient Responses.

Interrogatory No. 2 to Defendant Pacheco – This interrogatory, inter alia, sought information from Defendant Pacheco concerning law enforcement agencies to which he has applied for positions in the past, and Defendant Pacheco provided no information concerning this request.

Interrogatory No. 7 to Defendant Pacheco – This interrogatory seeks information concerning the recording devices available to Defendant Pacheco at the time of the incident that gives rise to this action and Defendant stated that he would supplement his answer.

Interrogatory No. 8 to Defendant Pacheco – This interrogatory seeks information concerning how Defendant Pacheco came to be at the location of the incidents that give rise to this action and Defendant stated that he would supplement his answer.

Interrogatory No. 9 to Defendant Pacheco – There is information that indicates Defendant Pacheco was assisting another law enforcement agency with detaining a citizen prior to this incidents that give rise to this action, this interrogatory seeks information concerning how far that incident was from where the incidents that give rise to this action. Defendant stated that he would supplement his answer.

Interrogatory No. 11 to Defendant Pacheco – The incidents that give rise to this action occurred at a convenient store, and this interrogatory seeks information concerning Defendant Pacheco's relationship to the personnel at the convenient store. Defendant stated that he would supplement his answer.

[1] All of the discovery referenced in this section are contained in Exhibit 1.

Interrogatory No. 12 to Defendant Pacheco – This interrogatory seeks information as to the identities of the law enforcement officers that Defendant Pacheco was with when he was involved in the detainment of a citizen prior to encountering Plaintiff. Defendant stated he would supplement his answer.

**B. Discovery Requests to which Defendants Objected on Insufficient Grounds.**

Interrogatory No. 3 to Defendant City of Espanola – This interrogatory seeks complaints made against Defendant Pacheco and is limited in scope. Defendants provide a boilerplate objection that it is not relevant and state that the answer will be supplemented.

Interrogatory No. 4 to Defendant City of Espanola – This interrogatory seeks complaints made against the Espanola Police Department and is limited in scope. Defendants provide a boilerplate objection that it is not relevant, burdensome and broad, and state that the answer will be supplemented.

Interrogatory No. 6 to Defendant City of Espanola – This interrogatory seeks information concerning lawsuits to which Espanola Police Department is a party and is limited in scope. Defendants provide a boilerplate objection that it is not relevant and state that the answer will be supplemented.

Interrogatories No. 3, 4, and 5 to Defendant Pacheco – These interrogatories seek information concerning complaints made against Defendant Pacheco, criminal investigations concerning Defendant Pacheco, and civil actions concerning Defendant Pacheco and are limited in scope. Defendants provide boilerplate objections that they are not relevant and broad and state that the answers will be supplemented.

Interrogatory No. 6 to Defendant Pacheco – This interrogatory seeks information concerning the type of stop he was assisting prior to encountering Plaintiff. Defendants provide a boilerplate objection that it is not relevant and state that the answer will be supplemented.

Request for Production No. 6 – This request seeks complaints against Espanola Police Departments alleging excessive force. Defendants provide a boilerplate objection that it is not relevant, overly broad, improperly assert that the information sought is confidential.

Request for Production Nos. 7, 8, and 9 – This request seeks documents concerning taser records that relate to the incident that gives rise to this action, Defendant Pacheco's history of taser use for the time he has been employed at the Espanola Police Department, and the history of taser use in the Espanola Police Department for the past five years. Defendants provide a boilerplate objection and direct Plaintiff to documents that do not contain the information sought.

Request for Production No. 13 – This request seeks an employment release from Defendant Pacheco and Defendant objected to the release provided and stated that he would provide a release to Plaintiff, but has not done so.

**III. The Law Regarding Discovery Particularly as Applied in Civil Rights Cases.**

The Tenth Circuit Court of Appeals has repeatedly stated that the scope of discovery in a civil rights case is extensive. *See Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975); *Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir. 1980). Relevance, for purposes of discovery, does not hinge on admissibility at trial. Rather, "[T]he Rule's relevancy requirement is to be construed broadly, and material is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved in the litigation. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978). Courts should liberally construe the scope of discovery under Rule 26. *Anaya*

*v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 649-651 (D.N.M. 2007). The Tenth Circuit has also made clear that this is particularly true in cases such as the instant case, (where defendants deny any wrongdoing or any constitutionally impermissible intent or motive behind their acts) involving "swearing matches" between the parties. *Denver Policemen Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 436 (10th Cir. 1981). The foregoing case relied heavily on the decision in *Wood v. Breier*, 54 F.R.D. 7 (E.D. Wisc. 1972), which held:

> Rule 26(c) of the Federal Rules of Civil Procedure grants the Court the power to suppress discovery. However, in a case such as this the arguments for suppression must be of such great weight as to overcome not just one but two major congressional and judicial policy decisions. The first of these is the broad federal mandate for discovery in all civil actions. This mandate reflects the decision that "a trial [should be] less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."

The importance of this policy is reflected in the decision that discovery should only rarely be suppressed. Only strong public policies weigh against disclosure:

> The principle favoring full access by the courts and litigants to relevant information, in the absence of strong competing considerations, is an important foundation for the achievement of justice by the Courts in individual lawsuits. This principle is national policy of high rank, wholeheartedly endorsed and furthered by Congress. In the absence of a specific prohibition against disclosure in judicial proceedings, such as Congress set forth in some statutes, clear and strong indication is required before it may be implied that the policy of prohibition is of such force as to dominate the broad objective of doing justice ...
>
> The second public policy that is challenged by this Motion for Suppression is that reflected in Section 1983 itself, "Its purpose is plain from the title of the legislation, 'An Act to Enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes.' 17 state.13." But it is the manner of enforcement which gives Section 1983 its unique importance, for enforcement is placed in the hands of the people. Each citizen "acts as a private attorney general who 'takes on the mantel of the sovereign,'" guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination

> of the truth rather than by a determination that the truth shall remain hidden." [All footnotes omitted].`

It is useful to keep in mind the following language from Moore's Federal Practice, Section 34.09 (2nd Edition) at page 2494.

> [Like all rules of discovery] Rule 34 is to liberally construed. 'These rules are salutary in effect and enable the court to at least approximate moral justice under the law.' The purpose of the rule...was to make broad and flexible the litigant's right to discovery. The rule should be liberally rather than narrowly construed. The rules permit "fishing" for evidence, as they should. If documents in defendants' possession tend to sustain plaintiff s claim, plaintiff is entitled to inspect them and have the use of them as evidence. *Citing Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed.451 (1947) and other cases.

It is important to remember the general scope of discovery as set forth in Rule 26(b)(l) and to emphasize that the test for relevance is based on the question of whether the requested material is relevant to the subject matter in that it relates to the claim or defense of any party: "It is not grounds for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Under the language of Rule 26(b)(1), scope of discovery and discoverability are judged by the same standard: Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party.

Rules 26 through 37 have been interpreted liberally to allow maximum discovery. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed.451 (1947). It is clear that what is relevant in discovery is far different from what is relevant at trial, in that the concept at the discovery stage is much broader. *See* C. Wright, *Law of Federal Courts*, 403 (1976). Discovery is designed to define and clarify the issues. If requested materials are reasonably calculated to lead to discovery of admissible evidence, the discovery request is relevant. F.R.Civ.P. 26 (b)(l);

*Weddington v. Consolidated Rail Corp.*, 101 F.R.D. 71, 73 (N.D. Ind. 1984). *Alliance to End Repression v. Rockford*, 75 F.R.D. 441, 444 (N.D. Ill. 1977). Therefore, discovery requests should be complied with if there is a reasonable possibility that the information sought may be relevant to the subject matter of the action. *Sherman Park Community Association v. Wauwatosa Realty,* 485 F.Supp. 838, 845 (E.D. Wis. 1980). Furthermore, the burden of showing that the requested discovery is not relevant to the issues in this litigation is clearly on the party resisting discovery. *Flora v. Hamilton*, 81 F.R.D. 576, (M.D.N.C. 1978); *Zucker v. Sable,* 72 F.R.D. 1, 3 (S.D.N.Y. 1975). Discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action

**A. Defendants Have Waived Any Right to Interpose Objections to the Interrogatories and Requests for Production of Documents Which Were Not Objected to in a Timely Manner.**

This Court has summarized the law regarding waiver of objections to discovery:

> Rule 33(b)(4) of the Federal Rules of Civil Procedure provides: "All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown." "Generally, in the absence of an extension of time or good cause, the failure to object to interrogatories within the time fixed by Rule 33, Fed.R.Civ.P., constitutes a waiver of any objection.
>
> Fed.R.Civ.P. 34(b) requires that a party upon whom a request for discovery is served respond within thirty days, either stating its willingness to comply or registering its objections. If the responding party fails to make a timely objection, or fails to state the reason for an objection, he may be held to have waived any or all of his objections. **If a party fails to file timely objections to document requests, such a failure constitutes a waiver of any objections which a party might have to the requests.** When the request far exceeds the bounds of fair discovery, a court retains discretion to decline to compel the production of documents even if a timely objection has not been made.

*Lucero v. Martinez*, No. CIV 03-1128 JB/DJS, 2006 WL 1304945, at *2 (D.N.M. 2006) (internal citations and quotations omitted)(emph. added). *See also, Mackey v. IBP Inc.*, 167

F.R.D. 186, 200 (D.Kan. 1996)(failure to assert a timely objection is a waiver of the right to object). Defendants have not objected to the discovery sought as outlined in Section IIA herein, and thus should be compelled to fully respond to the discovery sought in this section. Additionally, there is no reasonable argument that the items sought by these requests "exceed the bounds of fair discovery". The information sought: history of applications to law enforcement agencies, recording devices available, how Defendant Pacheco got to the location, what he was doing immediately prior to the incident, and Defendant's relationship to potential witnesses are all relevant and standard inquiries in a case of this nature and Defendants should be provided to provide this information immediately.

**B. Defendants' Boilerplate Objects are Insufficient**

The party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections. *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661-62, 666 (D.Kan.2004), and that burden "cannot be satisfied by merely asserting a boilerplate objection to discovery without providing concrete substantiation. *E.E.O.C. v. Outback Steakhouse of FL, Inc.*, 251 F.R.D. 603, 608 (D. Colo. 2008).

Interrogatories 3-5 to Defendant Pacheco seek standard background information concerning this Defendant. These requests ask for Defendant Pacheco's criminal background, civil suits he has been involved in and complaints that have been made against him. Interrogatories 6 and 10 to Defendant Pacheco seek information directly related to the incident that gives rise to this action. Specifically, these interrogatories seek information concerning Defendant Pacheco's whereabouts immediately prior to engaging Defendant in this matter and Defendant's familiarity with the location of the incidents that give rise to this action. Defendant

Pacheco's boilerplate objections to this discovery are not made in good faith and he cannot meet the burden of establishing that Plaintiff is not entitled to this discovery.

Requests for production 7-9 all involve the Defendant Pacheco's use of a taser and the Espanola Police Department's history of the use of tasers. The requests concerning the Espanola Police Department are limited to five years. This case involves the use of a taser on Defendant, and obviously the records related to Defendant Pacheco's use of a taser in the incident that gives rise to the lawsuit are relevant, but also, Defendant Pacheco's propensity to use a taser is discoverable information for Plaintiff and Espanola Police Department's history of taser use is relevant to Plaintiff's municipal liability claim.

Request for production 11 seeks information concerning recording equipment available to Espanola Police Department. Insofar as Plaintiff knows the incident that gives rise to this lawsuit was not reordered by Defendant Pacheco, and Plaintiff is entitled to as much information as possible to discern why this incident was not recorded and whether Defendant Pacheco was in compliance with his department's policies and procedures. Again, the objections made to this discovery lack good faith and Defendants have not described how the information sought is not discoverable, and therefore, Defendants should be ordered to produce the discovery immediately.

**C. Plaintiffs are Entitled to the Document Sought in Interrogatory 3 and Request for Production 6 Because these Documents are Discoverable as to Their Claims Against Defendant City of Raton.**

Plaintiffs have asserted a municipal liability claim against Defendant City of Espanola. They contend Defendant City's failure to adequately train, supervise, and discipline subordinate officers was a cause of the alleged violation of the Plaintiff's federal rights. They further

contend Defendant City maintained an unwritten custom or policy which permitted or condoned the unlawful seizures and the unlawful searches of citizens.

The relevance to a municipal liability claim of evidence regarding other acts of misconduct by Defendant subordinate officers and other subordinate officers in the department and the response of the policymaking officials to complaints of such misconduct was explained long ago by United States District Judge Edwin L. Mechem:

> [C]ausation hinges on whether the police department operated in a way that made officers' inappropriate behavior more likely. When a police chief, put on notice of previous acts of misconduct, fails to discipline the police force, the inevitable result of the over-zealous force continuing such conduct is is conduct that causes plaintiff s deprivation. *Herrera v. Valentine*, 653 F.2d 1220, 1225 (8th Cir. 1981). Failure to discipline causes plaintiff s injury if lack of discipline "tacitly encourage[s] unconstitutional conduct or … give[s] police officers the idea that the Town was deliberately indifferent to the occurrence of such conduct. *Berry v. McLemore*, 670 F.2d 30, 33 (5th Cir. 1982). The supervisor's creation of an environment in which subordinates are more likely to behave inappropriately causes the harm.

*Salazar v. Stewart*, Civil No. 85-527 MC (Memo. Op. and Order 11/14/85).

Courts have repeatedly ordered discovery of internal affairs investigative materials - even for complaints filed by persons, other than the named plaintiffs in the lawsuit. This includes the decisions of this Court in *Romero v. Vigil,* Civil No. 01-00617 BB/RLP (Order 12/6/01), (defendant Sheriff's Department in *Monell* claim was ordered to produce all documentation related to any citizen complaints filed against subordinate officers alleging unlawful search, unlawful seizure, unlawful arrest, false imprisonment or use of force while handcuffing a citizen for the two year period before the incident at issue) and in *Baca v. Mayhew*, Civil No. 98-01251) (Memo. Op. and Order, 7/8/99) (Defendants required to produce all IA documents stemming from allegations of similarly misconduct as such documents were discoverable in regard to

plaintiff s punitive damage claim). *See also Tanberg v. Sholtis*, Civil No. 02-00348 LCS/LFG (Memo. Op. and Order 11/8/02) (internal affairs files concerning alleged acts of misconduct similar to those alleged in the complaint).[2] Within the last few months, this Court ruled in a civil rights matter that Plaintiffs were entitled to discovery related to prior complaints of defendant law enforcement officers, *Chavez v. City of Albuquerque*, No. 13CV00557 WJ/SMV, 2014 WL 6604051 (D.N.M. Nov. 17, 2014). The Court held that Defendants were required to disclose information that was similar in nature to Plaintiff's claims, i.e: excessive force, unreasonable seizures, and unlawful detentions. *Id*, at *8.

The Tenth Circuit has made it clear that in order to prove municipal and supervisory liability claims in a 42 U.S.C. §1983 action premised on a claim that the defendants maintained an unlawful custom or practice which caused the alleged misconduct at issue, a plaintiff must demonstrate other incidents of similar misconduct by subordinate officers. *Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir. 1995) ("Normally a plaintiff must point to facts outside the plaintiff s own case to support the allegations of an unconstitutional municipal policy."); *Cannon v. City and County of Denver*, 998 F.2d 867, 877-78 (10th Cir. 1993) (Defendant not entitled to summary judgment on municipal liability claim where plaintiffs introduced evidence of other incidents of alleged unlawful arrest by various subordinate officers); *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995) (plaintiff alleging City maintained an unlawful custom or policy cannot succeed unless she can produce evidence that the city maintained a "widespread" practice which, by definition, involves evidence of the

---

[2] These cases rely, in part, on Tenth Circuit holdings in *Denver Policeman's Protective Assn. v. Lichtenstein*, 660 F.2d at 435 and *Flanagan v. Munger*, 890 F.2d 15571,0570 (10th Cir. 1989).

City's treatment of incidents involving other persons). See also, *Cowdrey v. City of Eastborough, Kansas*, 730 F.2d 1376 (10th Cir. 1984) (en banc).

Other circuits have reached similar conclusions. In *Fiacco v. City of Rensselaer, NY*, 783 F.2d 319 (2nd Cir. 1986), the Second Circuit upheld the admissibility at trial of evidence of seven written citizen complaints of misconduct, made over a five year period, most of which did not involve the two subordinate defendants who violated Fiacco's rights.

> "We have no doubt," that in the context of a *Monell* claim alleging City improperly supervised its officers in the use of force "the evidence that a number of claims of police brutality had been made by other persons against the City, together with evidence of the City's treatment of these claims, was relevant. Whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force. The City's knowledge of these allegations and the nature and extent of its efforts to investigate and record the claims were pertinent to Fianco's contention that the City had a policy of non-supervision of its policemen that reflected a deliberate indifference to their use of excessive force...if the City's efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims."
>
> *Id*, at 328.

In *Spell v.McDaniel*, 591 F.Supp. 1090, 1115 (E.D. N.Car. 1984); *aff'd*, 824 F.2d 1380 (4th Cir. 1987), the court rejected similar objections raised by Defendants herein regarding incidents of misconduct by all officers of the department:

> Plaintiff claims this information is relevant to demonstrate a repetitive pattern of violent behavior and unreasonable use of force by numerous Fayetteville police officers. In addition, plaintiff contends the information will show that the supervisory defendants knew or should have known of this pattern of assaultive behavior and failed to take reasonable steps to investigate and prevent it. The information is critical, plaintiff argues, if he is to have any chance of success on his claim of municipal liability. The court agrees.
>
> Under §1983, the extent of supervisors' knowledge of and participation in the acts of their subordinates determines the scope of their liability and ipso facto the

> municipality's liability. The essence of plaintiff's complaint is that the supervisory defendants were grossly negligent or deliberately indifferent in failing to provide adequate training, supervision and discipline to officers on the police force, including McDaniel. To prove this allegation, the court agrees with plaintiff that it would be highly relevant, indeed critical, to establish what the defendants knew regarding allegations of police brutality and when they knew it. *See Culp v. Devlin,* 78 F.R.D. 136 (E.D. Pa. 1978); *Norton v. McKeon,* 444 F.Supp. 384 (E.D. Pa. 1977). Neither plaintiff nor defendants suggest any other source for information which would shed light upon the supervisory defendants' possible knowledge and concomitant responsibility in this case. Id. 1115.
>
> The basic problem with defendants' objection is that it fundamentally disregards the theories underlying plaintiff s case. *Culp v. Devlin,* 78F.R.D. at 141. Therefore, on relevancy grounds this court agrees with the vast majority of courts which have considered the issue and overrules defendants' objections. See, e.g., *Mercy v. County of Suffolk ,* 93 F.R.D. 520 (E.D. N.Y. 1982); *Dykes v. Morris,* 85 F.R.D. 373 (N.D. Ill. 1980); *Dos Santos v. 0'Neill,* 62 F.RD. at 451; *Crawford v. Dominic,* 469 F.Supp. 260 (E.D. Pa. 1979); *Wood v. Breier,* 54 F.R.D. at 13.

*Id*. at 328. See also, *Gentile v. City of Suffolk,* 926 F.2d 142 (2nd Cir. 1991); *Bordanaro v. McLeod,* 871 F.2d 1151 (1st Cir. 1989).

In *Larez v. City of Los Angeles,* 946 F.2d 630, 647 (9th Cir. 1991), the court upheld a jury verdict against the City and its police chief, inter alia, on the basis of evidence of a "custom or policy" established by the failure of those defendants to adequately investigate citizen complaints of misconduct made against LAPD officers, not simply those involved in the *Larez* incident, and their failure to take proper remedial steps in response to those complaints.

In *Henry v. County of Shasta,* 132 F.3d 512, (9th Cir. 1997), the court discussed the importance of evidence that after the plaintiff s arrest, County officers, none of which were defendants in *Henry*, engaged in similar misconduct against two other individuals." Post-event

evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but it is highly probative with respect to that inquiry. *Id*, at 519.[3]

In addition to the District Court of New Mexico, other district courts have also repeatedly held that all documents relating to citizen complaints against both the subordinates involved in the plaintiff s incident and other officers involved in similar misconduct. The courts have recognized that where, as here, claims of municipal and supervisory liability are made, these documents, including internal affairs documents, are relevant to the issue of credibility, notice to the employer, ratification by the employer, motive of the officers and punitive damages. *Hampton v. City of San Diego,* 147 FRD 227, 229 (S.D. Cal. 1993); *Soto v. City of Concord,* 162 FRD 603, 620-22 (N.D. Cal.1995); *Montalvo v. Hutchinson,* 837 F.Supp. 576, 581 (S.D. N.Y. 1983) (evidence of internal files on incidents occurring after the incident at issue may be "highly relevant" to show intent of participants and an institution or individual patterns of behavior and is discoverable); *Everitt v. Breu.el,* 750 F. Supp. 1063, 1069-70 (D. Col. 1990). In *Soto,* while the Court required in camera inspection of psychological and medical records of officers, production of documents relating to all investigations of citizen complaints, including internal affairs documents, were ordered produced to the plaintiff pursuant to an appropriate protective order. *Soto v. City of Concord,* supra, 162 FRD, at 623.

In *Marshall v. Columbia Lea Regional Hospital, et. al,* 345 F.3d 1157 (10th Cir. 2003), the Tenth Circuit considered the relevance of prior acts of misconduct to a race discrimination claim asserted against a subordinate officer and to the municipal liability claim asserted against

[3] Other circuit courts have held such evidence to be relevant to municipal liability claims. "As subsequent conduct may prove discriminatory motive in a prior employment decision, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) and subsequent acts may tend to prove the nature of a prior conspiracy, see Anderson v. United States, 417 U.S. 211, 219 (1974), so the subsequent acceptance of dangerous recklessness by the policy maker tends to prove his pre-existing disposition and policy.

the City of Hobbs. Unlike the instant case where the alleged acts of misconduct occurred while the subordinate officers were employed with Defendant City of Raton, in *Marshall* the prior acts were more remote - having occurred at the officer's prior employment. The trial court had not referred to the documents regarding this alleged misconduct in its order granting the defendant summary judgment. The Tenth Circuit discussed the documents in some depth, discussed the relevance of evidence demonstrating a pattern of misconduct to a claim of race discrimination and reversed the summary judgment order, in large part, because of these documents. The Court remanded the case with instructions to the district court to analyze and determine the admissibility of the documents. The Court stated that if admissible, these documents, together with other evidence, may be sufficient to create a trial issue on the plaintiff s race discrimination claim against the officer. *Id*. at 1170-71. Obviously, the Tenth Circuit decision setting forth the relevance of these documents, relying on them to reverse the granting of summary judgment and requiring the district court to analyze the documents of the subordinates prior acts of misconduct for purposes of admissibility (and clearly suggesting their admissibility), demonstrates such evidence is <u>discoverable</u> in the first instance as to the claims against the subordinate defendants.

The *Marshall* court also reversed the district court entry of summary judgment on the municipal liability claim. The Court noted that a city may be held liable in a §1983 action if an unconstitutional deprivation is caused by "custom" of the city, which it defined as "an act that, although not formally approved by an appropriate decision maker, has sent widespread practice as to have the force of law." *Id*, at 1177. The Court remanded this claim back with instructions for the district court to consider the admissibility and significance of the subordinate defendants' prior acts and various allegedly racially motivated incidents involving the Hobbs police force.

*Id*, at 1177-78. In an extraordinary full page footnote, the Tenth Circuit summarized some of the other incidents of alleged police misconduct which had resulted in lawsuits against the City of Hobbs. *Id*, at 1178, n. 13. Again, the obvious implication of the Tenth Circuit's holding that such evidence must be considered on summary judgment on a *Monell* claim is that the plaintiff is entitled to discover such evidence in order to be able to present it to the court on summary judgment (and at trial).

Despite this above outlined progeny of well-established authority regarding disclosure of the type of information Plaintiffs seek, Defendants have merely objected to providing this information on grounds that the information sought is not relevant, is overly broad, and confidential. The discovery that Plaintiffs seek is clearly designed to elicit the defendant officers' history of instances involving excessive force, unreasonable seizures, and the manner in which Defendant City of Espanola has trained and supervised them. These requests further seek discoverable evidence to demonstrate the lack of adequate internal affairs investigations when Defendant has received complaints about officer using excessive force and otherwise violating the Fourth Amendment rights of citizens.

The information sought in these RFPs narrowly seeks information from the Raton Police Department relevant to their training, supervision, and discipline in instances involving excessive force. This information is all relevant to the Espanola Police Department's pattern, practice and acceptance of its officers engaging in such behavior. Plaintiffs are seeking discovery of information that the courts have repeatedly held to be discoverable in a federal civil right case alleging municipal liability.

WHEREFORE, for the reasons stated above, Plaintiffs respectfully request that the Court

grant their motion to compel and for other relief, including reasonable attorney's fees, as the Court deems appropriate.

Respectfully Submitted,

_/s/ Leon Howard 2.2.15______

Leon F. Howard III
Law Office of Lucero & Howard, LLC
P.O. Box 25391
Albuquerque, New Mexico 87125
505-225-8778 Fax: 505-288-3473
leon@lawoffice-lh.com

Joachim Marjon
Marjon Law, P.C.
238 Griffin Street
Santa Fe, NM 87501
Phone: (505) 954-1219
Fax: (505) 930-5932

*Attorneys for Plaintiff*

**NOTICE OF DELIVERY**

I hereby certify that on the 2nd day of February 2015, I filed the foregoing electronically through the CM/ECF system which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Mark A. Basham, Esq.
Basham & Basham, P.C.
2205 Miguel Chavez Rd., Ste. A
Santa Fe, NM 87505-1111
mbasham@bbpcnm.com

Martin R. Esquivel, Esq.
Esquivel Law Firm, LLC
111 Lomas Blvd. N.W., Ste. 203
Albuquerque, NM 87102-2313
mesquivel@esqlawnm.com

/s/ Leon Howard 2/2/2015
Leon F. Howard